**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION,<br><br>    Plaintiff,<br><br>v.<br><br>DONALD TRUMP, *et al.,*<br><br>    Defendants. | Civil Action No. 1:17-cv-1351 (CKK) |
| LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW,<br><br>    Plaintiff,<br><br>v.<br><br>PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY, *et al*.,<br><br>    Defendants. | Civil Action No. 1:17-cv-1354 (CKK) |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR
A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 3

I.    THE FEDERAL ADVISORY COMMITTEE ACT ..................................................... 3

II.   THE PRESIDENTIAL ADVISORY COMMITTEE ON ELECTION INTEGRITY .... 4

ARGUMENT .......................................................................................................................... 7

I.    PLAINITFFS HAVE NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS .......... 7

    A.    This Court Lacks Jurisdiction. ................................................................................. 7

        1.    The Court lacks jurisdiction to hear Plaintiffs' claims arising from their request for documents related to the Commision's July 19 meeting, because the Commission did not decline those requests and intends to post the relevant documents. ............................................................................ 8

        2.    Plaintiffs' claims about access to documents related to the Commission's June 28 teleconference are moot. ........................................................................ 9

    B.    FACA Does Not Provide a Private Right of Action, and Plaintiffs Cannot Bring Their Claims Through the APA. ............................................................................... 10

    C.    Mandamus Is Unavailable to Plaintiffs. ................................................................. 13

        1.    The mandamus standards are stringent. ...................................................... 14

        2.    Plaintiffs have not satisfied these stringent standards. ............................... 14

        3.    Because applying FACA to a presidential commission raises serious constitutional concerns, even if Plaintiffs satisfied the mandamus standards – and they do not – this Court should decline to exercise mandamus. .................................................................................................... 16

    D.    Even Assuming Plaintiffs Could Bring a Claim for Violations of FACA, the Commission's Actions Are Consistent With FACA's Requirements. ................. 19

        1.    The June 28, 2017, telephone call was not subject to the notice and open meeting requirements of the Federal Advisory Committee Act. .............. 20

        2.    The Commission's July 19, 2017 meeting will comply with FACA's open meeting requirements. ................................................................................. 23

3.      The Commission will make available records pursuant to FACA section
        10(b) in advance of the July 19, meeting ................................................. 25

II.     PLAINTIFFS HAVE NOT DEMONSTRATED IRREPERABLE INJURY .................. 26

III.    THE BALANCE OF HARMS AND THE PUBLIC INTEREST WEIGH AGAINST .......
        INJUNCTIVE RELIEF..................................................................................................... 29

CONCLUSION..................................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Aamer v. Obama*,
   742 F.3d 1023 (D.C. Cir. 2014) ............................................................... 9

*Allied Chem. Corp. v. Daiflon, Inc.*,
   449 U.S. 33 (1980) ............................................................................... 7

*Armstrong v. Exec. Office of the Pres.*,
   90 F.3d 553 (D.C. Cir. 1996) ........................................................... 13, 14

*Ass'n of American Physicians and Surgeons, Inc. v. Clinton*,
   997 F.2d 898 (D.C. Cir. 1993) ......................................................... 17, 20

*Baptist Mem'l Hosp.Medical Center v. Sebelius*,
   603 F.3d 57 (D.C. Cir. 2010) ................................................................. 7

*Cheney v. U.S. Dist. Ct. for D.C.*,
   542 U.S. 367 380381 (2004) ........................................................ *passim*

*Citizens for Responsibility & Ethics in Washington v. U.S. SEC*,
   858 F. Supp. 2d 51 (D.D.C. 2012) ......................................................... 12

*Citizens for Responsibility & Ethics in Wash. v. Office of Admin.*,
   566 F.3d 219 (D.C. Cir. 2009) ......................................................... 13, 14

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ............................................................................. 25

*CityFed Fin. Corp. v. Office of Thrift Supervision*,
   58 F.3d 738 (D.C. Cir. 1995) ................................................................. 8

*Clapper v. Amnesty Int'l. USA*,
   133 S. Ct. 1138 (2013) ................................................................... 10, 25

*Cobell v. Norton*,
   391 F.3d 251 (D.C. Cir. 2004) ............................................................... 8

*Colorado Envtl Coal. v. Wenker*,
   353 F.3d 1221 (10th Cir. 2004) .............................................................. 7

*Ctr. for Biological Diversity v. Tidwell*,
   No. 15-2176, --- F. Supp. 3d ---, 2017 WL 943902 (D.D.C. 2017) ...................... 12

*Cummock v. Gore*,
   180 F.3d 282 (D.C. Cir. 1999) ........................................................... 6, 31

*Dalton v. Specter*,
511 U.S. 462 (1994) ......................................................................... 7

*Food Chem. News v. HHS*,
980 F.2d 1468 (D.C. Cir. 1992) ................................................. 29, 30

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) ..................................................................... 7, 13

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) ......................................................................... 10

*Heartwood, Inc. v. U.S. Forest Serv.*,
431 F. Supp. 2d 28 (D.D.C. 2006) ................................................... 15

*Holy Cross Neighborhood Ass'n v. Julich*,
106 F. Supp. 2d 876 (E.D. La. 2000) .............................................. 28

*In re Cheney*,
334 F.3d 1096 (D.C. Cir. 2003) ................................................. 17, 18

*In re Cheney*,
406 F.3d 723 (D.C. Cir. 2005) (en banc) .................................. *passim*

*In re Khadr*,
823 F.3d 92 (D.C. Cir. 2016) ........................................................... 24

*In re Medicare Reimbursement Litig.*,
414 F.3d 7 (D.C. Cir. 2005) ......................................................... 8, 18

*In re Navy Chaplaincy*,
534 F.3d 756 (D.C. Cir. 2008) ........................................................ 29

*Int'l Brominated Solvents Ass'n v. Am. Conf. of Governmental Indus. Hygienists, Inc.*
393 F. Supp. 2d 1362 (M.D. Ga. 2005) ............................................. 7

*Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*,
933 F. Supp. 2d 58 (D.D.C. 2013) .................................................... 8

*Judicial Watch v. Nat'l Energy Policy Dev. Group*,
219 F. Supp. 2d 20 (D.D.C. 2002) ........................................... 6, 7, 18

*Judicial Watch, Inc. v. Dep't. of Energy*,
412 F.3d 125 (D.C. Cir. 2005) ......................................................... 16

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
736 F. Supp. 2d 24 (D.D.C. 2010) ................................................... 12

*Louisiana Envtl. Action Network v. Browner*,
87 F.3d 1379 (D.C. Cir. 1996) ..................................................... 9, 10

iv

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ......................................................................................... 9

*Meyer v. Bush,*
    981 F.2d 1288 (D.C. Cir. 1993) ............................................................. 13, 15

*N. States Power Co. v. U.S. Dep't of Energy,*
    128 F.3d 754 (D.C. Cir. 1997) ...................................................................... 7

*Nadar v. Baroody,*
    396 F. Supp. 1231 (D.D.C. 1975) ................................................................ 17

*Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control,*
    557 F. Supp. 524 (D.D.C. 1983) ................................................................... 24

*Nat'l Treasury Emps. Union v. United States,*
    101 F.3d 1423 (D.C. Cir. 1996) .................................................................... 10

*Nken v. Holder,*
    556 U.S. 418 (2009) ...................................................................................... 33

*Public Citizen v. U.S. Dep't of Justice,*
    491 U.S. 440 (1989) ............................................................................... *passim*

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ......................................................................................... 9

*Texas v. United States,*
    523 U.S. 296 (1998) ...................................................................................... 11

*United States v. Nixon,*
    418 U.S. 683 (1974) ...................................................................................... 21

*Warth v. Seldin,*
    422 U.S. 490 (1975) ........................................................................................ 9

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) ...................................................................................... 10

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ...................................................................................... 8, 33

*Wisc. Gas Co. v. FERC,*
    758 F.2d 669 (D.C. Cir. 1985) (per curiam) ................................................ 29

*Wolfe v. Weinberger,*
    403 F. Supp. 238 (D.D.C. 1975) ................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Aamer v. Obama,*
    742 F.3d 1023 (D.C. Cir. 2014) ........................................................................ 7

*Allied Chem. Corp. v. Daiflon, Inc.,*
    449 U.S. 33 (1980) ........................................................................................ 14

*Armstrong v. Exec. Office of the Pres.,*
    90 F.3d 553 (D.C. Cir. 1996) .................................................................... 11, 12

*Ass'n of American Physicians and Surgeons, Inc. v. Clinton,*
    997 F.2d 898 (D.C. Cir. 1993) .................................................................. 17, 19

*Baptist Mem'l Hosp.Medical Center v. Sebelius,*
    603 F.3d 57 (D.C. Cir. 2010) ........................................................................ 15

*Cheney v. U.S. Dist. Ct. for D.C.,*
    542 U.S. 367 380381 (2004) ................................................................. *passim*

*Citizens for Responsibility & Ethics in Washington v. U.S. SEC,*
    858 F. Supp. 2d 51 (D.D.C. 2012) ................................................................ 12

*Citizens for Responsibility & Ethics in Wash. v. Office of Admin.,*
    566 F.3d 219 (D.C. Cir. 2009) ...................................................................... 10

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ........................................................................................ 23

*CityFed Fin. Corp. v. Office of Thrift Supervision,*
    58 F.3d 738 (D.C. Cir. 1995) .......................................................................... 7

*Clapper v. Amnesty Int'l. USA,*
    133 S. Ct. 1138 (2013) ............................................................................. 8, 23

*Cobell v. Norton,*
    391 F.3d 251 (D.C. Cir. 2004) ........................................................................ 7

*Colorado Envtl Coal. v. Wenker,*
    353 F.3d 1221 (10th Cir. 2004) ...................................................................... 4

*Ctr. for Biological Diversity v. Tidwell,*
    No. 15-2176, --- F. Supp. 3d ---, 2017 WL 943902 (D.D.C. 2017) ...................... 11

*Cummock v. Gore,*
    180 F.3d 282 (D.C. Cir. 1999) .................................................................... 3, 29

*Dalton v. Specter*,
    511 U.S. 462 (1994) ................................................................................................. 4

*Food Chem. News v. HHS*,
    980 F.2d 1468 (D.C. Cir. 1992) ............................................................... 9, 26, 28

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ......................................................................................... 4, 11

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ................................................................................................. 8

*Heartwood, Inc. v. U.S. Forest Serv.*,
    431 F. Supp. 2d 28 (D.D.C. 2006) ...................................................................... 13

*Holy Cross Neighborhood Ass'n v. Julich*,
    106 F. Supp. 2d 876 (E.D. La. 2000) ................................................................. 26

*In re Cheney*,
    334 F.3d 1096 (D.C. Cir. 2003) ..................................................................... 15, 17

*In re Cheney*,
    406 F.3d 723 (D.C. Cir. 2005) (en banc) ..................................................... *passim*

*Int'l Brominated Solvents Ass'n v. Am. Conf. of Governmental Indus. Hygienists, Inc.*
    393 F. Supp. 2d 1362 (M.D. Ga. 2005) ............................................................... 4

*Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*,
    933 F. Supp. 2d 58 (D.D.C. 2013) ........................................................................ 7

*Judicial Watch v. Nat'l Energy Policy Dev.* Group,
    219 F. Supp. 2d 20 (D.D.C. 2002) ......................................................... 4, 12, 15

*Judicial Watch, Inc. v. Dep't. of Energy*,
    412 F.3d 125 (D.C. Cir. 2005) ........................................................................... 14

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
    736 F. Supp. 2d 24 (D.D.C. 2010) ..................................................................... 11

*Louisiana Envtl. Action Network v. Browner*,
    87 F.3d 1379 (D.C. Cir. 1996) ............................................................................. 8

*Meyer v. Bush*,
    981 F.2d 1288 (D.C. Cir. 1993) ................................................................... 11, 13

*N. States Power Co. v. U.S. Dep't of Energy*,
    128 F.3d 754 (D.C. Cir. 1997) ........................................................................... 14

*Nadar v. Baroody*,
    396 F. Supp. 1231 (D.D.C. 1975) ...................................................................... 17

*Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control*,
    557 F. Supp. 524 (D.D.C. 1983) ....................................................................................... 22

*Nat'l Treasury Emps. Union v. United States*,
    101 F.3d 1423 (D.C. Cir. 1996) ......................................................................................... 8

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................................................................ 30

*Public Citizen v. U.S. Dep't of Justice*,
    491 U.S. 440 (1989) .................................................................................................. *passim*

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ........................................................................................................... 9

*Texas v. United States*,
    523 U.S. 296 (1998) ......................................................................................................... 9

*United States v. Nixon*,
    418 U.S. 683 (1974) ....................................................................................................... 19

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ......................................................................................................... 8

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ...................................................................................................... 7, 30

*Wisc. Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985) (per curiam) ................................................................... 27

*Wolfe v. Weinberger*,
    403 F. Supp. 238 (D.D.C. 1975) ..................................................................................... 13

## **Statutes**

5 U.S.C. app. 2 § 2(b) ............................................................................................................ 5
5 U.S.C. app. 2 § 7(c) ............................................................................................................ 6
5 U.S.C. app. 2 § 10 ...................................................................................................... *passim*
5 U.S.C. § 551 .................................................................................................................. 7, 13
5 U.S.C. § 552(f)(1) ............................................................................................................. 13
5 U.S.C. § 702 ...................................................................................................................... 12
28 U.S.C. § 1361 ................................................................................................................... 7

**Administrative and Executive Materials**

41 C.F.R. § 102-3.140 .................................................................................... 19, 26, 27, 31

41 C.F.R. § 102-3.160 ........................................................................................... 6, 23, 24

62 Fed. Reg. 33,408 (June 19, 1997) ........................................................................... 26

78 Fed. Reg. 1917 (Jan. 9, 2013) ................................................................................. 27

78 Fed. Reg. 64,942 (Oct. 30, 2013) ........................................................................... 27

79 Fed. Reg. 46,801 (Aug. 11, 2014) .......................................................................... 26

82 Fed. Reg. 22,389 (May 11, 2017) ............................................................................ 2, 3

82 Fed. Reg. 24,995 (May 31, 2017) ............................................................................... 4

82 Fed. Reg. 31,063 (July 5, 2017) .............................................................................. 3, 4

## **INTRODUCTION**

This Court should deny the extraordinary requests for preliminary injunctive relief sought by the American Civil Liberties Union ("ACLU") and the Lawyers' Committee for Civil Rights Under Law ("LCCR") against the Presidential Advisory Commission on Election Integrity (the "Commission").

Plaintiffs cannot surmount numerous threshold limitations on this Court's jurisdiction. The bulk of Plaintiffs' claims focus on records related to the Commission's June 28, 2017 organizational conference call and upcoming July 19, 2017 meeting to which Plaintiffs claim they are entitled under the Federal Advisory Committee Act ("FACA").  However, the June 28 documents are attached to the declaration of the Commission's Designated Federal Officer (and will shortly be published on the Commission's webpage), and the Commission has always intended to publish documents related to the July 19 meeting on its webpage in advance of that meeting – which is all that this Circuit requires that it do.  Accordingly, Plaintiffs' claims to documents are either moot (in the case of the June 28 documents) or not yet ripe (in the case of the July 19 documents).

Plaintiffs also lack a right of relief.  FACA does not provide a private right of action, and Plaintiffs cannot avail themselves of the Administrative Procedure Act ("APA") because the Commission is not an "agency" as defined by the APA.  Nor is the drastic remedy of mandamus available against this Presidential commission chaired by the Vice President.  Mandamus requires that the Plaintiffs show that they have a "clear and indisputable" right to relief, a showing they cannot make.  And mandamus is particularly inappropriate in a situation like here, where constitutional concerns about the separation of powers counsel against unwarranted judicial interference in the Presidential advice process.

In any event, even assuming Plaintiffs could seek relief under FACA, the Commission's actions are entirely consistent that statute's requirements. Plaintiffs have received (or will timely receive) the documents they have sought. And their claim that the upcoming, livestreamed July 19 meeting does not comport with FACA's open meeting requirements is wrong. FACA does not require that members of the public be permitted to attend the Commission's meeting in person, nor does it require that the Commission provide an opportunity for oral comment at every meeting. Finally, while Plaintiffs accuse the Commission of having violated the open meeting requirements by holding a June 28 conference call, that teleconference only discussed administrative and preparatory matters, and therefore under the General Service Administration's FACA regulations, did not need to be publically noticed. Even if this Court disagrees with that conclusion, Plaintiffs have not shown that there was a "clear and indisputable" violation, as is required for mandamus, much less that such a violation would reoccur, as is required for injunctive relief.

In addition to failing to demonstrate they will succeed on the merits of their claims, Plaintiffs also fail to satisfy the remaining requirements for obtaining preliminary relief. They cannot show irreparable injury – they have or will have received the documents they have sought in advance of the July 19 meeting, and they cannot show that viewing a livestream of the meeting, rather than watching in person, will cause them irreparable harm. Nor have Plaintiffs shown that the balance of equities is in their favor or that an injunction is in the public interest. The President established the Commission "to promote fair and honest Federal elections . . . ." Exec. Order. No. 13,799, 82 Fed. Reg. 22,389, 22,389 (May 11, 2017). Plaintiffs seek to halt this important work with meritless claims. Plaintiffs' motions for temporary restraining orders and preliminary injunctions should be denied.

## BACKGROUND

### I.     THE FEDERAL ADVISORY COMMITTEE ACT

Congress enacted FACA, 5 U.S.C. app. 2 §§ 1-15, to reduce the growing cost of

unnecessary blue ribbon commissions, advisory panels, and honorary boards set up by the

government to advise the President and federal agencies.  Through FACA, Congress aimed to

ensure that advisory committees be "established only when essential and that their number be

minimized; that they be terminated when they have outlived their usefulness; that their creation,

operation, and duration be subject to uniform standards and procedures; that Congress and the

public remain apprised of their existence, activities, and cost; and that their work be exclusively

advisory in nature."  *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 446 (1989) (citing 5

U.S.C. app. 2 § 2(b)).

To achieve these goals, FACA imposes an array of procedural requirements.  As relevant

here, advisory committees that are subject to FACA must give advance notice in the Federal

Register of any meetings, 5 U.S.C. app. 2 § 10(a)(2),  hold their meetings "open to the public,"

*id.* § 10(a)(1), allow "[i]nterested persons" to "attend, appear before, or file statements with"

them, subject to reasonable rules or regulations, *id.* § 10(a)(3), keep detailed minutes of each

meeting and copies of all reports received, issued, or approved by the advisory committee, *id.* §

10(c), and make their records available to the public for inspection and copying at a single

location, *id.* § 10(b).  Advisory committees must also designate a federal official who is required

to chair or attend each meeting of the advisory committee.  *Id.* § 10(e).

The General Services Administration ("GSA") has promulgated regulations providing

guidance to agencies and the public about FACA's requirements.  *See Cummock v. Gore*, 180

F.3d 282, 285 (D.C. Cir. 1999) (noting that GSA is the federal agency "charge[d] . . . with

prescribing regulatory guidelines and management controls applicable to advisory committees")
(citing 5 U.S.C. app. 2 § 7(c)).  GSA's regulations implementing FACA address, among other
things, "[w]hat activities of an advisory committee are not subject to the notice and open meeting
requirements of the Act," *see* 41 C.F.R. § 102-3.160, and the parameters of the Act's open
meeting requirements, *see id.* § 102.3-140.

FACA does not contain a provision for judicial review.  *See Judicial Watch v. Nat'l
Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 33 (D.D.C. 2002) ("FACA creates no private right
of action."); *see also Int'l Brominated Solvents Ass'n v. Am. Conf. of Governmental Indus.
Hygienists, Inc.* ("*IBSA*"), 393 F. Supp. 2d 1362, 1377-78 (M.D. Ga. 2005).  In the absence of a
private right of action, a claim to enforce FACA's requirements may only be brought pursuant to
the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*.  *See Judicial Watch*, 219 F. Supp. 2d at
33-34; *IBSA*, 393 F. Supp. 2d at 1378; *Colorado Envtl Coal. v. Wenker*, 353 F.3d 1221, 1234-35
(10th Cir. 2004).  However, as explained below, the Commission is not an "agency" whose
actions are subject to judicial review under the APA.  *See Franklin v. Massachusetts*, 505 U.S.
788, 801 (1992); *see also Dalton v. Specter*, 511 U.S. 462, 469-70 (1994).

## II.    THE PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY

The President established the Presidential Advisory Commission on Election Integrity in
Executive Order No. 13,799.  82 Fed. Reg. 22,389 (May 11, 2017) [hereinafter "Exec. Order No.
13,799"]; *see also* Declaration of Andrew J. Kossack ("Kossack Decl.") ¶ 1 [attached hereto as
Exhibit 1].  The Commission is charged with "study[ing] the registration and voting processes
used in Federal elections," "consistent with applicable law," in order to provide a report to the
President.  Exec. Order No. 13,799, § 3.  Vice President Pence is the Chairman of the
Commission.  *Id.* § 2.  Kansas Secretary of State Kris Kobach is the Vice Chair of the

Commission.  Kossack Decl. ¶ 1.  Members of the Commission come from federal, state, and local jurisdictions and both political parties.  *Id.*

On June 28, 2017, the members of the Commission attended an organizational conference call.  *Id.* ¶ 5.  The call focused on administrative and preparatory issues, including welcome remarks by the Vice President, an overview of how the Commission will operate (including its first meeting, introduction to its staff members, and potential schedules), and financial disclosures.  *Id.* & Ex. B.  The members also discussed information request letters that Vice Chair Kobach intended to send out to the states.  *Id.* ¶ 5.  The materials prepared for the call and a read-out of the call itself are attached as an exhibit to the Kossack Declaration, and will be made available on the Commission's webpage.  *Id.* ¶¶ 4, 5 & Ex. A, B, C.

As announced in the Federal Register on July 5, 2017, the Commission will hold its first public meeting on July 19, 2017.  *See* The Presidential Commission on Election Integrity (PCEI); Upcoming Public Advisory Meeting, 82 Fed. Reg. 31,063, 31,063 (July 5, 2017); Kossack Decl. ¶ 6.  "This meeting will consist of a ceremonial swearing in of Commission members, introductions and statements from members, a discussion of the Commission's charge and objectives, possible comments or presentation from invited experts, and a discussion of next steps and related matters."  82 Fed. Reg. at 31,603; *see also* Kossack Decl. ¶ 6.

The July 19 meeting will be held in the Eisenhower Executive Office Building and "will be open to the public through livestreaming on https://www.whitehouse.gov/live."  82 Fed. Reg. at 31,603.  Furthermore, the video will be captured and posted on the internet after the meeting for any member of the public who wishes to view it later.  Kossack Decl. ¶ 7.  The Commission's Designated Federal Officer is not aware of any limitations on the number of viewers who can access the livestreaming site, *id.*, and the White House has used this livestream

system in the past.  *See* Notification of a Public Meeting of the President's Commission on

Combating Drug Addiction and the Opioid Crisis, 82 Fed. Reg. 24995 (May 31, 2017); Kossack

Decl. ¶ 7.  The arrangements for public attendance through livestreaming are consistent with the

practices of other Presidential commissions.  Kossack Decl. ¶ 9.

       Due to security protocols with the Vice President's attendance, members of the general

public will not be able to attend the July 19 meeting in person.  *Id.* ¶ 8.  However, as space

permits, a number of accredited members of the White House press corps will be invited to

attend in person.  *Id.*  The Commission also intends to hold future meetings in different locations

with easier public access.  *Id.*  Members of the public may submit written comments to the

Commission via email.  82 Fed. Reg. at 31063; Kossack Decl. ¶ 8. While there will not be oral

comments from the public at the initial meeting, the Commission may offer individuals

interested in providing oral comments the opportunity to do so at subsequent meetings. 82 Fed.

Reg. at 31063; Kossack Decl. ¶ 8.

       The Commission has developed a webpage, which is publically available as of today,

July 13, 2017.[1]  Kossack Decl. ¶ 2.  The Commission anticipates shortly posting all materials

that were distributed to the Commission members in advance of the June 28 conference call.  *See*

*id.* ¶¶ 2, 4-5, 10.  The Commission will also post online any materials that have been or will be

distributed to the Commission's members for the July 19 meeting in advance of that meeting.  *Id*.

¶ 10.  To the extent that members of the public wish to access physical copies of any record(s),

the Commission will make arrangements to provide those physical records publically at the

offices of the General Services Administration.  *Id.*

---

[1] *Presidential Advisory Commission on Election Integrity*,
https://www.whitehouse.gov/blog/2017/07/13/presidential-advisory-commission-election-integrity.

## ARGUMENT

"The standard for issuance of the extraordinary and drastic remedy of a temporary restraining order or a preliminary injunction is very high." *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 933 F. Supp. 2d 58, 75 (D.D.C. 2013) (citation omitted). An interim injunction is "never awarded as of right," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), and "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion," *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). A party moving for a temporary restraining order or a preliminary injunction "must demonstrate '(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.'" *Jack's Canoes*, 933 F. Supp. 2d at 75-76 (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)).

## I.      PLAINTIFFS HAVE NOT DEMONSTRATED A LIKELIHOOD OF SUCCESS

### A.      This Court Lacks Jurisdiction

This Court lacks subject-matter jurisdiction over Plaintiffs' claims that the Commission has violated FACA by not providing access to certain records. *See Aamer v. Obama*, 742 F.3d 1023, 1028 (D.C. Cir. 2014) ("We begin, as we must, with the question of subject-matter jurisdiction." (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998))). With respect to records related to the July 19 meeting, Plaintiffs have not demonstrated that they have suffered an injury-in-fact, as required to have standing. Alternatively, that claim is unripe. As for records relating to the Commission's June 28 telephone call, even assuming that Plaintiffs

could at one time show injury as a result of not having access to those documents, their claims are now moot.

      **1.**      **The Court lacks jurisdiction to hear Plaintiffs' claims arising from their request for documents related to the Commission's July 19 meeting, because the Commission did not decline those requests and intends to post the relevant documents**

Plaintiffs' requests for preliminary injunctive relief based on lack of access to documents related to the Commission's July 19 meeting must be denied because plaintiffs have suffered no injury.  Moreover, given the Commission's commitment to place any relevant documents on its webpage, any future threat of injury is not certainly impending.   An Article III court cannot entertain the claims of a litigant unless they are both "constitutionally and prudentially ripe."  *See Louisiana Envtl. Action Network v. Browner*, 87 F.3d 1379, 1381 (D.C. Cir. 1996).  As a constitutional matter, Article III does not allow a litigant to pursue a cause of action to recover for an injury that is not "certainly impending."  *Clapper v. Amnesty Int'l. USA*, 133 S. Ct. 1138, 1147 (2013); *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996).  As the Supreme Court stated in *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990), "[a]llegations of possible future injury do not satisfy the requirements of Art. III."  *See also Chlorine Inst., Inc. v. Fed. R.R. Admin.*, 718 F.3d 922, 927 (D.C. Cir. 2013) (noting that a plaintiff that does not face an "imminent or certainly impending injury" cannot establish either standing or ripeness).

For a case brought under FACA, the Supreme Court has recognized that a "refusal to permit" access to a committee's records "to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue."  *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449, 109 S. Ct. 2558, 2564, 105 L. Ed. 2d 377 (1989).  In *Public Citizen*, the Court referenced the fact that plaintiff Washington Legal Foundation "has specifically requested, and been

refused, the names of candidates under consideration by the ABA committee, reports and minutes of the Committee's meetings, and advance notice of future meetings." *Id.*

Plaintiffs' complaints of injury-in-fact, while sparse, appear to allege the type of injury referenced in *Public Citizen*, *i.e.*, the denial of the right of access to records of the Commission. *See* ACLU Compl. ¶ 69, ECF No. 1 (asserting that plaintiffs have not received a response to their request for all materials "which were made available to or prepared for or by" the Commission); LCCR Compl. ¶ 9, ECF No. 1 (asserting LCCR's rights under FACA have been violated by "refusing to disclose the Commission's records."). But unlike in *Public Citizen*, the Commission has not refused to provide documents, and, in fact, has announced its intent to release the relevant July 19 materials in advance of that meeting. *See id.* ¶ 10. Plaintiffs themselves requested a response by July 14; they simply jumped the gun by filing suit (and this TRO motion) prior to hearing from the Commission and prior to the response date they themselves selected. Accordingly, Plaintiffs have not demonstrated injury related to their request for the July 19 materials and their claims are, on their face, not yet ripe. *Texas v. United States.*, 523 U.S. 296, 300 (1998) (claim is not ripe for adjudication "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all").

### 2. Plaintiffs' claims about access to documents related to the Commission's June 28 teleconference are moot

Plaintiffs' document claims related to the June 28 teleconference are moot because the Commission has now provided the relevant materials related to that teleconference. *See Cicero v. Lew*, 190 F. Supp. 3d 16, 23 (D.D.C. 2016) ("If 'events have so transpired that [a judicial decision] will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future,' the case is moot, and this Court lacks jurisdiction to entertain the suit.") (quoting *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 534 (D.C. Cir.

2015)).  The Commission has committed to placing any documents relevant to its meetings on its webpage and to complying with FACA requirements regarding notice and document access in the future.  And this is not a situation where "a defendant has voluntarily stopped the transaction, but may 'return to [its] old ways,'" necessitating a finding that the case is not moot.  *Citizens for Responsibility & Ethics in Washington v. U.S. S.E.C.*, 858 F. Supp. 2d 51, 61 (D.D.C. 2012) (citation omitted).  The Commission never indicated that it would not provide access to documents.  To the contrary, the sole evidence before the Court is the Commission's commitment to provide documents pursuant to FACA.

**B.     FACA Does Not Provide a Private Right of Action, and Plaintiffs Cannot Bring Their Claims Through the APA**

FACA does not provide a private cause of action.  *Ctr. for Biological Diversity v. Tidwell*, --- F. Supp. 3d ---, 2017 WL 943902, at *4 (D.D.C. 2017); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 736 F. Supp. 2d 24, 30 (D.D.C. 2010); *see also In re Cheney*, 406 F.3d at 726 ("[t]he district court agreed that FACA did not create a private cause of action").  Plaintiffs must therefore seek to use the APA's cause of action.  5 U.S.C. § 702.  The APA, however, only applies to *agency* action, and the Commission is not an agency for the purposes of the APA.

The APA defines an "agency" as "each authority of the Government of the United States," subject to several limitations not applicable here.  5 U.S.C. § 551(1).  It is well established that the President and his close advisors do not fall within the APA's ambit.  *See Franklin*, 505 U.S. at 800-01 (holding that "[o]ut of respect for the separation of powers and the unique constitutional position of the President," he is not subject to the APA).  An entity of the Executive Office of the President is not an "agency" for APA purposes if it does not have "substantial independent authority in the exercise of specific functions."  *Soucie v. David*, 448 F.2d 1067, 1073 (D.C. Cir. 1971).  Applying that standard in interpreting the definition of

"agency" in the related context of determining whether a group within the Executive Office of the President constitutes an "agency" for purposes of the Freedom of Information Act ("FOIA"), the D.C. Circuit has laid out a three-factor test: "(1) how close operationally the group is to the President, (2) whether it has a self-contained structure, and (3) the nature of its delegated authority." *Armstrong v. Exec. Office of the Pres.*, 90 F.3d 553, 558 (D.C. Cir. 1996) (quoting *Meyer v. Bush*, 981 F.2d, 1288, 1293 (D.C. Cir. 1993)); *see also id.* ("The closer an entity is to the President, the more it is like the White House staff, which solely advises and assists the President, and the less it is like an agency to which substantial independent authority has been delegated.").

In applying this test in FOIA cases, the D.C. Circuit has acted consistent with *Soucie*'s "substantial independent authority" APA standard, including whether the EOP entity has regulatory or funding powers. *See Citizens for Resp. & Ethics in Wash.* ("*CREW*") *v. Office of Admin.*, 566 F.3d 219, 222-23 (D.C. Cir. 2009). For example, while looking at other entities within the Executive Office of the President, this Circuit has held that the Council of Economic Advisors is not an "agency" because it lacks regulatory power or independent authority, *id.* at 223, the National Security Council is not an "agency" because it plays only a "coordinating role on behalf of the President," *id.* (quoting *Armstrong*, 90 F.3d at 565), and the Office of Administration within the Executive Office of the President is not an "agency" because it provides "operational and administrative" tasks in "direct support of the President," *id.* at 224-25. *See also Armstrong*, 90 F.3d at 558-59 (citation omitted). Plaintiffs do not even acknowledge, let alone attempt to distinguish, this line of cases.

Like these other White House entities, the Commission is an entity that lacks "substantial independent authority in the exercise of specific functions," *Soucie*, 448 F.2d at 1073, and is not,

therefore, an agency subject to the APA.  The Commission reports directly to the President and is "solely advisory," Exec. Order No. 13,799 § 3; *see also* Charter, Presidential Advisory Commission on Election Integrity ¶ 4 ("The Commission will function solely as an advisory body.")  *EPIC v. PACEI*, No. 17-cv-1320 (CKK), Kobach Decl., Exh. 2, ECF No. 8-1.  It is chaired by the Vice President, a constitutional officer (and not, of course, an agency head).  Exec. Order No. 13,799 § 2.  Its purpose is to "submit a report to the President" that identifies rules and activities that enhance and undermine the "American people's confidence in the integrity of the voting processes used in Federal elections" and to identify vulnerabilities in voting systems that could lead to improprieties.  *Id.* § 3(a)-(b).  The Commission has no regulatory or funding powers, nor does it have any independent administrative responsibilities.  Instead, it exists solely to provide research and advice to the President.  *CREW*, 566 F.3d at 222-23.  It is not, therefore, an "agency" subject to the APA.[2]  *See id.*

Moreover, the mere involvement of federal officials or federal agencies in an advisory committee do not transform that committee into an "agency."  In *Meyer*, the D.C. Circuit confronted this challenge.  There, as here, there was a presidential commission chaired by the Vice President.  There – unlike here – the commission included "various cabinet members of the Task Force [who were] unquestionably officers who wielded great authority as heads of their department."  981 F.2d at 1297.  But that did not turn the commission into an agency; the relevant inquiry is the function exercised, not the job title.  The court of appeals concluded that

---

[2] In any event, even apart from the functional test establishing that the Commission exists to advise and assist the President, and is therefore not an "agency" under the APA, it is clear that an entity cannot be at once both an advisory committee and an agency. *See Heartwood, Inc. v. U.S. Forest Serv.*, 431 F. Supp. 2d 28, 36 (D.D.C. 2006) (noting that an "'advisory committee cannot have a double identity as an agency'" (quoting *Wolfe v. Weinberger*, 403 F. Supp. 238, 242 (D.D.C. 1975))).

"there is no indication that when *acting as the Task Force* they were to exercise substantial independent authority . . . . Put another way, the whole does not appear to equal the sum of its parts." *Id.* (emphasis added). Similarly, the mere presence of a federal agency that provides some administrative support – but does not exercise "substantial independent authority" – would not transform an otherwise non-agency "advise and assist" component into an agency. *Id.* at 1297-98.

Indeed, courts within this Circuit have uniformly found presidential task forces and commission analogous to the Commission not to be agencies subject to the APA or FOIA. In *Meyer v. Bush*, the D. C. Circuit held that President Reagan's Task Force on Regulatory Relief, similarly chaired by the Vice President was not an agency subject to FOIA. 981 F.2d at 96. In *Judicial Watch, Inc. v. Dept. of Energy*, 412 F.3d 125, 127 (D.C. Cir. 2005), this Circuit held that Vice President Cheney's National Energy Policy Development Group ("NEPDG") was not an agency for purposes of FOIA. Consistent with these decisions, this Court should similarly conclude that the Commission at issue here is not an agency, meaning that Plaintiffs cannot invoke the APA cause of action.

### C.      Mandamus Is Unavailable to Plaintiffs

If this Court were to grant relief to Plaintiffs, it could only be through "drastic and extraordinary" writ of mandamus. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004). But mandamus is unavailable here here: as the Supreme Court and D.C. Circuit have repeatedly recognized, application of mandamus in a presidential context – and particularly in the FACA context, where advice to the president is at issue – raises serious constitutional concerns. Those concerns inform the mandamus analysis, where, in any event, Plaintiffs have not shown their "clear and indisputable' right to relief or that Defendants have a clear duty to act.

### 1.     The mandamus standards are stringent

A writ of mandamus is "a drastic [remedy], to be invoked only in extraordinary circumstances." *N. States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 758 (D.C. Cir. 1997) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980)).  The mandamus statute provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus relief is appropriate only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Baptist Medical Center v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010).  The party seeking mandamus "has the burden of showing that "'its right to issuance of the writ is clear and indisputable." *N. States Power Co.*, 128 F.3d at 758 (citation omitted).  Even if the plaintiff overcomes all these hurdles, the district court must also consider whether mandamus relief should issue as a matter of its discretion.  *In re Cheney*, 406 F.3d at 729; *see also In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc) (discussing mandamus standards).

### 2.     Plaintiffs have not satisfied these stringent standards

Some courts have assumed, but not definitively held, that mandamus claims may lie against the Vice President and other non-agency participants on presidential advisory committees.  *See, e.g.*, *Judicial Watch v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 44 (D.D.C. 2002) (holding that "it would be premature and inappropriate to determine whether the relief of mandamus [against the Vice President] will or will not issue" at the motion to dismiss stage".) *re'vd on other grounds*, 334 F.3d 1096 (D.C. Cir. 2003).  Nonetheless, mandamus is not appropriate here.

Here, Plaintiffs' allegations resoundingly fail the mandamus analysis. First, with respect to the first two factors, Plaintiffs cannot demonstrate that Defendants violated a "clear, nondiscretionary duty" imposed by FACA sufficient to sustain a "drastic" cause of action against the Vice President (and President, in the case of the ACLU suit) based on mandamus. Conversely, Plaintiffs cannot establish a clear right to relief. Plaintiffs complain that the Vice President and the other Commission members held an introductory conference call, which Plaintiffs assert constitutes a "meeting" subject to FACA's notice and recordkeeping requirements. They also claim that the Commission has declined to produce documents in advance of the noticed July 19 meeting, and that livestreaming the July 19 meeting does not satisfy FACA's public access requirements. Plaintiffs are wrong on the merits: Defendants have complied with FACA. *See infra.* Even if that conclusion were uncertain, however, (and it is not), it is debatable enough to foreclose mandamus. FACA does not address the question of what constitutes a "meeting" and FACA similarly does not specify the exact timing of document disclosure, and, therefore, there is no clear, nondiscretionary duty in these two areas, which is a necessary condition for granting mandamus. And Congress specifically left the question of meeting forum to the discretion of the Administrator of General Services, insofar as FACA provides that attendance by interested persons shall be "subject to such reasonable rules or regulations as the Administrator may prescribe." 5 U.S.C. app. 2, § 10(a)(3). In turn, the Administrator has provided that meetings may take place in a variety of forums as long as they are "reasonably accessible to the public." 41 C.F.R. § 102-3.140(a). Far from establishing the

clear, nondiscretionary duty on the part of Defendants regarding meeting forum that mandamus would require, the regulations give Defendants wide discretion on this issue.[3]

> ### 3. Because applying FACA to a presidential commission raises serious constitutional concerns, even if Plaintiffs satisfied the mandamus standards – and they do not – this Court should decline to exercise mandamus

Defendants do not concede that the FACA can be constitutionally applied to presidential commissions, such as this Commission, which was created by the President and is chaired by the Vice President, a constitutional officer.  The Supreme Court and numerous judges have noted that the application of FACA to govern the manner in which the President receives advice is inconsistent with the separation of powers and the right of the President to receive confidential advice.  *See Cheney*, 542 U.S. at 385 ("[T]he Executive's constitutional responsibilities and status are factors counseling judicial deference and restraint in the conduct of litigation against it."); *In re Cheney*, 334 F.3d 1096, 1113 (D.C. Cir. 2003) (Randolph, J., dissenting) ("As applied to committees the President establishes to give him advice, FACA has for many years teetered on the edge of constitutionality."); *see also Pub. Citizen*, 491 U.S. at 466 (noting that the application of FACA to the President "present[s] formidable constitutional difficulties."); *id.* at 488-89 (1989) (Kennedy, J., with whom, Rehnquist, C.J., and O'Connor, J. join, concurring in the judgment) ("The mere fact that FACA would regulate [such] as to interfere with the manner in which the President obtains information necessary to discharge his duty assigned under the Constitution is enough to invalidate [FACA].").

---

[3] As all three initial elements of mandamus are mandatory, *see In re Cheney*, 406 F.3d at 729, and Plaintiffs have not satisfied the first two elements, this Court need not reach the issue of whether there is an adequate remedy at law.

Similarly, the D.C. Circuit in *Association of American Physicians and Surgeons, Inc. v. Clinton*, 997 F.2d 898, 908-10 (D.C. Cir. 1993) ("*AAPS*"), concluded that applying FACA and its disclosure requirements to a task force set up by the President to solicit advice from private citizens intermixed, or not, with government officials, on an issue of utmost concern to his Presidency – in that case, health care reform – would seriously burden the President's Article II right to confidential communications.  *See also In re Cheney*, 406 F.3d 723, 728 (D.C. Cir. 2005) (en banc) ("In making decisions . . . the President must be free to seek confidential information from many sources both inside the government and outside."); *Nadar v. Baroody*, 396 F. Supp. 1231, 1234 (D.D.C. 1975) ("To hold that Congress intended to subject meetings of this kind to press scrutiny and public participation with advance notice on formulated agendas, etc., as required by [FACA], would raise the most serious questions under our tripartite form of government as to the congressional power to restrict the effective discharge of the President's business.").

Applying FACA to this Commission established by the President raises identical separation of powers concerns to those repeatedly identified by courts in this circuit and the Supreme Court.  Accordingly, any argument to proceed against the Commission under the mandamus statute needs to be balanced against the serious constitutional implications of finding a clear and non-discretionary duty under FACA to regulate the manner in which the President receives advice.  To be sure, the Commission has agreed voluntarily to abide by the provisions of FACA.  *See* Kossack Decl. ¶ 2.  But the constitutional analysis must inform the court's discretionary determination as to the appropriateness of accepting mandamus jurisdiction.

For these reasons, even if Plaintiffs could meet the other prerequisites to mandamus (and they cannot), the Court should decline to proceed in that manner as a matter of discretion.

*Cheney*, 542 U.S. at 382 ("[S]eperation of powers considerations should inform a [court's]

evaluation of a mandamus petition involving the President or the Vice President."); *see also In re*

*Cheney*, 406 F.3d at 727 ("Although we do not reach the question whether applying FACA to

Presidential committees . . . would be constitutional, separation-of-powers considerations have

an important bearing on the proper interpretation of the statute.").  Here, Plaintiffs seek

mandamus jurisdiction against the Vice President, as well as against the President (in the case of

the ACLU case).  As discussed above, in the *Cheney* litigation, the Supreme Court criticized the

lower courts for failing to consider, in their consideration of mandamus jurisdiction, whether the

wide-ranging discovery ordered against the Vice President "constituted an unwarranted

impairment of another branch in the performance of its constitutional duties."  *Cheney*, 542 U.S.

at 390-91.  This consideration weighs in favor of rejecting mandamus jurisdiction here.  *See also*

*Pub. Citizen*, 491 U.S. at 466 (recognizing that applying FACA to meetings between Presidential

advisors and private citizens "present[s] formidable constitutional difficulties"); *AAPS*, 997 F.2d

at 908-10 (finding that applying FACA and its disclosure requirements to a task force set up by

the President to solicit advice from private citizens intermixed, or not, with government officials,

on an issue of utmost concern to his presidency would seriously burden the President's Article II

right to confidential communications).

    "It is well established that 'a President's communications and activities encompass a

vastly wider range of sensitive material than would be true of any ordinary individual.'"  *Cheney*,

542 U.S. at 381 (quoting *United States v. Nixon*, 418 U.S. 683, 715 (1974)).  As the Supreme

Court explained in *Cheney*, this does not mean that the President is above the law.  The point is,

rather, that, "the public interest requires that a coequal branch of Government afford Presidential

confidentiality the greatest protection consistent with the fair administration of justice, and give

recognition to the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties." *Id*. at 382 (citations omitted).  The Supreme Court concluded that "[t]hese separation-of-powers considerations should inform a court of appeals [or district court's] evaluation of a mandamus petition involving the President or the Vice President." *Id*.

Thus, to proceed under a mandamus theory on the basis of Plaintiff's allegations would have grave consequences for the operation of the Offices of the President and Vice-President. Allowing suits of this nature would mean that a President's or Vice President's attempts to obtain advice and consultation would be frequently interrupted by litigation, frustrating their ability to obtain timely and valuable advice and information.  Moreover, the President's use of beneficial advisory groups would be greatly chilled if all that was required to impose the burden of litigation on the government was a complaint that stated that FACA violations occurred. Indeed, if found sufficient for mandamus, Plaintiffs' allegations would set the lowest of thresholds for putting the President to the burden of litigation, one that litigants would routinely meet, thus turning on its head the *Cheney* admonition that mandamus should be "hardly ever [be] granted."  406 F.3d at 729.

### D.   Even Assuming Plaintiffs Could Bring a Claim For Violations of FACA, the Commission's Actions Are Consistent With FACA's Requirements

Even if Plaintiffs could overcome all of these threshold barriers, Plaintiffs' FACA claims are not likely to succeed and therefore cannot justify the extraordinary remedy of preliminary injunctive relief.  Plaintiffs bring three substantive challenges: First, they argue that the June 28, 2017 conference call held by members of the Commission was subject to FACA's notice and open meeting requirements.  It was not; Committee members discussed only preparatory and

administrative issues during the conference call, therefore the call was exempt from FACA's notice and open meeting requirements.

Second, Plaintiffs posit that the upcoming July 19, 2017 Commission meeting will not comply with FACA's open meeting requirements, because it allows for public attendance through livestreaming and does not provide for public oral comments.  However, FACA regulations expressly contemplate electronic meetings, and FACA itself only requires an opportunity for written comments, which the Commission has provided.

Finally, Plaintiffs seek written records related to the June 28 conference call and July 19 meeting.  Although the June 28 conference call did not constitute a formal meeting under FACA, the Commission will make these available on a public webpage and intends to publish the July 19 documents in advance of the meeting.

### 1.     The June 28, 2017, telephone call was not subject to the notice and open meeting requirements of the Federal Advisory Committee Act

On June 28, 2017, the members of the Commission held an organizational and preparatory conference call in advance of their first public meeting.  Kossack Decl. ¶ 5. Plaintiffs claim that this call violated FACA section 10(a)'s notice and open meeting requirements, 5 U.S.C. app 2 § 10(a).  *See* Pls.' Application for TRO and/or Prelim. Injunction ("ACLU Mem."), at 16-17, ECF No. 3; Pls.' Mem. Supp. Mot. TRO & Prelim. Injunction ("LCCR Mem."), at 10-11, ECF No. 3.  Plaintiffs are wrong.

First, the June 28 conference call consisted of preparatory and administrative activities that are not subject to FACA's notice and open meeting requirements.  41 C.F.R. § 102-3.160. FACA's notice and open meeting requirements do *not* apply to advisory committee activities related to "preparatory work," *i.e.*, meetings that "gather information, conduct research, or analyze relevant issues and facts in preparation for a meeting of the advisory committee," and to

"administrative work," *i.e.*, the "administrative matters of the advisory committee or to receive administrative information from a Federal officer or agency." *Id.*  Indeed, the June 28 call was focused primarily on organizational matters: Vice President Pence gave welcome remarks; the Commission members were provided an overview of the Commission, including the date of its first actual meeting, an overview of its staff, a potential timeline for future meetings; and financial disclosure issues. *See* Kossack Decl. ¶ 5.  As part of this teleconference, Commission members also discussed information requests, including the content of a letter seeking publically available data from state voter rolls and feedback on how to improve election integrity later sent by Vice Chair Kobach.  *See id.*

The Committee's discussion of information requests is precisely the type of preparatory work not subject to FACA's notice and open meeting requirements.  FACA regulations exempt meetings that "gather information, conduct research, or analyze relevant issues and facts in preparation for a meeting of the advisory committee" from FACA section 10(a)'s disclosure requirements.  41 C.F.R. § 102-3.160(a).  The ACLU characterizes the public notice requirement as triggered by whether the meeting is "substantive."  ACLU Mem. at 16.  But the actual text of the regulations does not use the highly subjective and imprecise term "substantive" to determine whether the public meeting requirements apply.  Rather, the FACA regulations define a committee meeting as "any gathering of advisory committee members (whether in person or through electronic means) held with the approval of any agency for the purpose of deliberating on the substantive matters *upon which the advisory committee provides advice or recommendations*."  41 C.F.R. § 102-3.25 (emphasis added).  During the teleconference at issue, the Commission was not deliberating on the content of its advice; instead, it was discussing

preparatory methods of gathering research material that would later be used to inform those deliberations.  *See* 41 C.F.R. § 102-3.160(a).

Indeed, FACA's preparatory framework distinguishes between research and preparatory analysis, on one hand, and substantive deliberations about recommendations, on the other.  The former is the necessary prerequisite work that do not need to be publically noticed.  Research is an inherent part of the advisory process: "Before the Committee can produce final recommendations, it must gather information, explore options with agencies to get comments and reactions, and evaluate alternatives*." Nat'l Anti-Hunger Coal.* v. *Exec. Comm. of President's Private Sector Survey on Cost Control,*, 557 F. Supp. 524, 529 (D.D.C. 1983); *see also In re Cheney*, 406 F.3d 723 at 730 (distinguishing between a committee's efforts to "gather information" and to "bring a collective judgment to bear.").[4]  As the ACLU itself recognizes, the preparatory elements of the June 28 call focused on information collection, *see* ACLU Mem. at 16.  Neither those activities, nor the administrative activities which rounded-out the call, fall within the ambit of the FACA.

Finally, even if the June 28 call should have been subject to FACA's public notice and disclosure requirements – and it should not have – Plaintiffs are not entitled to injunctive relief to enjoin future calls or meetings, as they apparently seek.  *See* ACLU Mem. at 22; LCCR Mem. at 16.  The June 28 call has already occurred, but under *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), past injury cannot justify injunctive or declaratory relief.  *Id.* at 101-02.  Instead, a plaintiff must show that a potential future injury is "both real and immediate, not conjectural or

---

[4] While these cases arose in the context of advisory subcommittees, FACA's implementing regulations 41 C.F.R. § 102-3.160, focus on the nature of the work, not on the person carrying out the activities, and expressly state that preparatory "[m]eetings of two or more advisory committee . . . members" are exempt from public notice.  41 C.F.R. § 102-3.160(a).

hypothetical" to get a prospective injunction.  *Id.* at 102; *see also Clapper*, 133 S. Ct. at 1143

(future injury must be "certainly impending").  And here, Plaintiffs have not alleged, must less

established, that the Commission will hold future meetings that fail to comply with the FACA's

public notice and disclosure requirements.  The opposite is true.  The Commission has published

a notice in the Federal Register announcing the date and location of its next meeting, and advised

that the meeting will be open to the public through livestreaming.  *See* 82 Fed. Reg. at 31,603;

Kossack Decl. ¶¶ 6-7.  Plaintiffs' requests for injunctive relief that purports to govern future

meetings are thus inappropriate and should be rejected.

> **2.      The Commission's July 19, 2017 meeting will comply with
> FACA's open meeting requirements**

Contrary to Plaintiffs' claims, the Commission's July 19, 2017 meeting will comply with

FACA's open meeting requirements, 5 U.S.C. app 2 § 10(a).  As announced in the Federal

Register on July 5, 2017, the meeting will be held at the Eisenhower Executive Office Building,

Room 350, and "will be open to the public through livestreaming on https://www.whitehouse

.gov/live."  The Presidential Commission on Election Integrity (PCEI); Upcoming Public

Advisory Meeting, 82 Fed. Reg. 31,063, 31,063 (July 5, 2017).

FACA requires that "[e]ach advisory committee meeting shall be open to the public."  5

U.S.C. app. 2 § 10(a)(1).  Plaintiffs assert that "open to the public" requires an in-person

meeting.  ACLU Mem. at 17-18; LCCR Mem. at 12.   It does not, and Plaintiffs cite to no

authority holding otherwise.  The FACA regulations specifically recognize that the Committee

chairperson must ensure that "[a]ny advisory committee meeting conducted *in whole or in part*

by a teleconference, videoconference, the Internet, or other electronic medium meets the

requirements of this subpart."  41 C.F.R. § 102-3.140(e) (emphasis added).  The statement that a

meeting may be conducted "in whole or in part" by virtual means is incompatible with a

requirement that an advisory meeting must allow for in-person public attendance.  Such a

requirement would also be inconsistent with the long history of FACA committees providing

public access through teleconferences or other electronic means.  *See* Kossack Decl. ¶ 9.

President Obama's Presidential Commission on Election Administration, for example, held a

"meeting open to the public via teleconference" on November 14, 2013.  *See* The Presidential

Commission on Election Administration (PCEA); Upcoming Public Advisory Meeting, 78 Fed.

Reg. 64,942, 64,952 (Oct. 30, 2013) ("Members of the public will not have the opportunity to

ask questions or otherwise participate in the teleconference.").[5]

   None of the other provisions of FACA's regulations require in-person public attendance.

The regulations require that the meeting must be held "in a manner *or* place reasonably

accessible to the public."  41 C.F.R. § 102-3.140(a).  The disjunctive "or" indicates that a

committee may comply with this provision so long as the meeting is held in a reasonably

accessible *manner*, i.e., a publically available web conference; it need not also be held in a

reasonably accessible place.  Similarly, section 102-3.140(b) states that "[t]he meeting room *or*

*other forum selected*" must be able to accommodate the advisory committee members, their staff,

and a "reasonable number of interested members of the public."  41 C.F.R. § 102-3.140(b)

(emphasis added).  The term "forum" is not limited to a physical location, and the Commission

can accommodate many more interested members of the public through a livestream than if

attendance was limited only to those who could fit within a physical room in Washington D.C.  It

also provides opportunities for those who cannot afford travel to Washington D.C. to attend the

_____

   [5] *See also Good Neighbor Environmental Board; Notification of Public Advisory Committee Teleconferences*, 79 Fed. Reg. 46,801 (Aug. 11, 2014); *Commercial Space Transportation Advisory Committee – Public Teleconference*, 78 Fed. Reg. 1917 (Jan. 9, 2013); *Science Advisory Board; Notification of Public Teleconference Meeting*, 62 Fed. Reg. 33,408 (June 19, 1997).

meeting.  Indeed, the White House routinely uses the livestream system for press briefings, speeches, and other events.  *See* Notification of a Public Meeting of the President's Commission on Combating Drug Addiction and the Opioid Crisis, 82 Fed. Reg. 24995 (May 31, 2017). Kossack Decl. ¶ 7.

LCCR separately argues that the Commission's July 19 meeting will not comply with FACA's public access requirement because it provides "no opportunity for public interaction or participation."  LCCR Mem. at 12.  However, FACA only requires that "[i]nterested persons shall be permitted to attend, appear before, *or* file statements with any advisory committee."   5 U.S.C. app. 2. § 10(a)(3) (emphasis added); *see also Holy Cross Neighborhood Ass'n v. Julich*, 106 F. Supp. 2d 876, 888 (E.D. La. 2000) ("The Court first notes Congress' use of the disjunctive: the Plaintiffs do not have the right to attend, appear before *and* file statements with the [committee].").  The Committee has provided an opportunity to "submit written comments for the Commission's consideration."  82 Fed. Reg. at 31063; *see also* Kossack Decl. ¶ 8.  While "[t]here will not be oral comments from the public at this initial meeting," as there are not required to be, "[t]he Commission will provide individuals interested in providing oral comments the opportunity to do so at subsequent meetings."  82 Fed. Reg. at 31063; *see also* Kossack Decl. ¶ 8.  The Commission's July 19 meeting will therefore comply with FACA's open meeting requirements.

### 3.    The Commission will make available records pursuant to FACA section 10(b) in advance of the July 19, meeting

FACA requires that documents that "were made available to or prepared for or by each advisory committee shall be available for public inspection and copying at a single location in the offices of the advisory committee."  5 U.S.C. app. 2 § 10(b).  Plaintiffs claim that the

Commission has not provided materials made available to or prepared for the June 28 conference call and the July 19 meeting.  ACLU Mem. at 18; LCCR Mem. at 11.

The government is required to make these materials available "before *or on* the date of the advisory committee meeting to which they apply." *Food Chem. News v. HHS*, 980 F.2d 1468, 1469 (D.C. Cir. 1992) (emphasis added).  The Commission will post materials related to the July 19 meeting on its webpage in advance of that meeting, and will make arrangements for physical copies of these materials to be located at the offices of the General Services Administration.  Kossack Decl. ¶ 10.  Further, although the June 28 conference call was not a "meeting" requiring advance publication, the Commission will also upload materials made available to or prepared for that call to its webpage and make physical copies available at GSA's offices.  *See id.*  Future materials will be posted to the Commission's webpage consistent with the requirements of FACA section 10(b).  *See id.* ¶ 2.  Because the Commission is complying with FACA section 10(b)'s requirements, Plaintiffs cannot show that are likely to succeed on the merits of their claims.

## II.    PLAINTIFFS HAVE NOT DEMONSTRATED IRREPERABLE INJURY

Plaintiffs' motions should also be denied because neither the ACLU nor LCCR has established that they have or will suffer irreparable injury absent a temporary restraining order or a preliminary injunction.  The D.C. Circuit "has set a high standard for irreparable injury." *In re Navy Chaplaincy*, 534 F.3d 756, 766 (D.C. Cir. 2008) (citation omitted).  It is a "well known and indisputable principle[]" that a "unsubstantiated and speculative" harm cannot constitute "irreparable harm" sufficient to justify injunctive relief. *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam).  Plaintiffs' assertions of irreparable harm, that they will lose the opportunity to meaningfully oversee the Commission's collection and assessment of voter

information if they are denied access to the Commission's records and the ability to attend in

person the Commission's meetings, *see* ACLU Mem. at 19-21; LCCR Mem. at 12-14, are

unsubstantiated and speculative and thus do no support their requests for preliminary relief.

First, contrary to Plaintiffs' contention, *see* ACLU Mem. at 20; LCCR Mem. at 13,

Plaintiffs have not been denied access to the Commission's records. As discussed above, the

June 28 conference call was not subject to FACA's open meeting and public inspection

requirements. *See supra* § D. Nevertheless, the Office of the Vice President issued a statement

after the call announcing that the Vice President had addressed the Commission members during

an organizational conference call, and that the Commission would hold its first meeting on July

19, 2017. *See* Kossack Decl. ¶ 5. Further, the Commission has committed to making the agenda

for the June 28 call available on its webpage. See id. ¶¶ 5, 10. The agenda is also attached to

the Kossack Declaration. *See id.* ¶ 5.

With respect to future materials, although the D.C. Circuit has made clear that FACA

does not require advisory committees to make materials pertaining to a committee meeting

available in advance of the meeting date, *see Food Chem. News*, 980 F.2d at 1472 ("it is essential

that, *whenever practicable*, parties have access to the relevant materials before *or at* the meeting

at which the materials are used and discussed") (emphasis added), the Commission has

committed to  posting the agenda for the July 19 meeting and other pertinent materials on the

Commission's webpage prior to the meeting, Kossack Decl. ¶ 10.

Second, as explained above, FACA does not provide a right to in-person public

attendance of advisory committee meetings. *See supra* § D. Rather it simply requires that

advisory committees meetings be "open to the public." *See* 5 U.S.C. app. 2 § 10(a)(1). FACA's

regulations contemplate that advisory committees may satisfy this requirement by providing

public access to meetings through the Internet or other electronic means. *See supra* § D (citing 41 C.F.R. app. 2 § 102-3.140(a)-(b), (e)). Plaintiffs and members of the public will be able to watch the July 19 meeting in real time on the White House's webpage. *See* Kossack Decl. ¶ 7. The video of the meeting will be captured and posted on the Commission's webpage for Plaintiffs or any member of the public to view at a later time. *Id.* Additionally, accredited members of the White House press corps will be invited to attend the July 19 meeting in person on a space available basis. *Id.* ¶ 8. Given that the July 19 meeting will be "open to public scrutiny[,]" *Cummock*, 180 F.3d at 284-85 (citation omitted), Plaintiffs have failed to establish that they will suffer irreparable harm if denied the ability to attend the July 19 meeting in person.

Third, LCCR also asserts that they will suffer irreparable harm if they are denied the ability to actively participate in the July 19 meeting. *See* LCCR Mem. at 13. But FACA does not require advisory committees to provide an opportunity for public participation at committee meetings. *See* 5 U.S.C. app. 2 § 10(a)(3). FACA only requires that members of the public be "permitted to attend, appear before, *or* file statements with any advisory committee." *Id.* As the Commission is currently accepting written comments by e-mail. *Id.*; 82 Fed. Reg. at 31,063, LCCR and members of the public already have the ability to provide their views to the Commission either before or after the July 19 meeting.

Fourth, the ACLU contends that, absent preliminary relief, "there is nothing to prevent the Commission" from continuing to hold organizational meetings without public access and where substantive issues are discussed. *See* ACLU Mem. at 20. The ACLU's contention is unsubstantiated and speculative, as already explained. Moreover, the June 28 conference call was not subject to FACA's notice and open meeting requirements because it consisted of administrative and preparatory activities, *see supra* § D, and therefore provides no basis on

which to grant extraordinary relief.  But even if the Court were to conclude that FACA's open

meeting regulations applied to the June 28 call, Plaintiffs are not irreparably injured because the

Commission has made the documents pertaining to the June 28 conference call publicly available

by attaching them to this filing and has committed to posting the documents on its

webpage.  Further, the June 28 conference call did not include deliberation of any advice or

recommendations.  *See* Kossack Decl. ¶ 5.  Moreover, the Commission has complied with

FACA's notice and open meeting requirements with respect to the July 19 meeting and nothing

before the Court establishes that the Commission will not continue to do so for future meetings.

Indeed, the opposite is true.  *See generally* Kossack Decl.

Finally, to the extent that Plaintiffs suggest that they will suffer irreparable harm absent

the entry of a temporary restraining order or a preliminary injunction because unfettered access

to the Commission is vital to their ability to assess whether the Commission is adequately

protecting voter roll information, that claim is the subject of a separate lawsuit before this Court.

*See Elec. Privacy Info. Ctr.* ("*EPIC*") *v. Presidential Advisory Comm'n on Election Integrity*,

Case No. 17-cv-1320 (CKK).  There, the Commission has represented to the Court that it will

not collect voter information until the Court has ruled on the plaintiff's motion for a temporary

restraining order.  *See* Third Decl. of Kris W. Kovach, *EPIC v. PACEI*, No. 17-cv-1320, ECF

No. 24-1; Order (July 11, 2017), *EPIC v. PACEI*, ECF No. 31.

Because Plaintiffs have failed to establish irreparable harm, there is no basis for the Court

to invoke its emergency powers at this early stage in the litigation.

## III.   THE BALANCE OF HARMS AND THE PUBLIC INTEREST WEIGH AGAINST INJUCTIVE RELIEF

A party seeking a temporary restraining order or preliminary injunction must also

demonstrate "that the balance of equities tips in [its] favor, and that an injunction is in the public

interest." *Winter*, 555 U.S. at 20.  "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Here, the public interest cuts against an injunction.  The President charged the Commission with the important task of "study[ing] the registration and voting processes used in Federal elections."  Exec. Order. No. 13,799, § 3.  The Commission must prepare a report that identifies laws that either enhance or undermine the American people's confidence in the integrity of the voting processes used in Federal elections.  The Commission must also investigate "those vulnerabilities in voting systems and practices used for Federal elections that could lead to improper voter registrations and improper voting." *Id.* § 3(c).  The public interest favors allowing the Commission to commence its work so that it can accomplish in a timely and cost efficient manner the mission that the President tasked it to do.

Furthermore, the Commission is comprised of members from across the country who have arranged their schedules so that they can are travel to Washington, D.C. to participate in the July 19 meeting in person.  *See* Kossack Decl. ¶¶ 1, 8.  If the Court were to grant the extraordinary relief the plaintiffs' request, it would disrupt the schedules and travel plans for the Commission's members, who serve on the Commission as a public service without compensation.  Exec. Order 13,799 § 7(d).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motions for a temporary restraining order and/or preliminary injunction.

Dated:  July 13, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director

*/s/ Joseph E. Borson*
CAROL FEDERIGHI
Senior Trial Counsel
JOSEPH E. BORSON
KRISTINA A. WOLFE
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1944
Email: joseph.borson@usdoj.gov

*Counsel for Defendants*